# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JERMAINE TOUSSAINT BOLLING,

    Plaintiff,

  v.                                                Case No. 10-C-678

MARY LYNN MURPHY and KARL HELD,

    Defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS

Plaintiff Jermaine Bolling is currently a prisoner serving a state sentence at the Oshkosh Correctional Institution. On August 9, 2010, Bolling commenced this pro se action pursuant to 42 U.S.C. § 1983 against defendants Mary Lynn Murphy, a Probation and Parole (P&P) Agent employed by the Wisconsin Department of Corrections, and Karl Held, her supervisor, for incarcerating him in the Waukesha County Jail for seven days after his mandatory release date on a previous sentence. Bolling claims that the defendants violated his constitutional rights by depriving him of his liberty without lawful authority. He seeks damages of $250,000. The case is before the Court on cross motions for summary judgment. For the reasons set forth below the defendants' motion for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied.

**BACKGROUND**

In early March of 2010, Bolling was an inmate at Red Granite Correctional Institution (RGCI) serving a state sentence. He was scheduled to be released into the community on Extended Supervision on March 9, 2010, his mandatory release date. On March 2, 2010, a week before his scheduled release, Bolling was provided the rules of community supervision, one of which directed him not to communicate with a certain woman in Mississippi. As his parole agent, Murphy was required to supervise Bolling and she was actively engaged in his release planning (Defendant's Proposed Findings of Fact "DPFF", Dkt. 26 ¶¶ 6-7). Prior to March 9, 2010, P&P Agent Murphy was contacted by law enforcement in Mississippi and informed that Bolling had been contacting the woman in violation of rules of community supervision. (DPFF ¶ 9.) Murphy learned that Bolling had sent written correspondence to the Mississippi woman stating that he had "plans" for the two of them, including, in his letter to her, his plan to " . . . com[e] to Mississippi to put an engagement ring on your finger as soon as I can." (DPFF ¶ 10.)

Based on the report from Mississippi, Bolling's mental health history, and his prior actions, which included multiple incidents of lewd and lascivious conduct, P&P Agent Murphy recommended that instead of releasing Bolling into the community on March 9, 2010, he be detained pending an investigation of possible rules violations prior to his release. (DPFF ¶¶ 16-19.) Defendant Held approved P&P Agent Murphy's recommendation, and on March 9, 2010, Bolling was transferred directly from RGCI to the Waukesha County Jail. Bolling was held in the Jail until March 16, 2010, when he was released into the community. (DPFF ¶¶ 17, 21.) He remained in the community until he was again detained on May 11, 2010, after a different woman obtained a harassment injunction against him for continuing to have contact with her. (DPFF ¶ 22.) Bolling

2

is currently being held in the Oshkosh Correctional Institution for reasons unrelated to this civil lawsuit.

## ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *McNeal v. Macht,* 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson,* 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Wrongful detention of a person by state agents can constitute an unreasonable seizure of a person in violation of the Fourth Amendment actionable under 42 U.S.C. § 1983. *Knox v. Smith,* 342 F.3d 651, 657 (7th Cir. 2003). Bolling claims that the defendants illegally caused him to be detained in the Waukesha County Jail after his mandatory release date. Bolling admits that he contacted the woman in Mississippi in violation of his Extended Supervision rules after signing them. (Doc. 32.) He contends, however, that his parole agent had no authority to detain him for conduct that occurred prior to his release on parole. In Bolling's view, a person cannot violate community supervision rules until he is first placed in the community. Since the conduct for which his agent detained him preceded his release, he claims his detention was unlawful.

Extended Supervision is, in effect, a substitute for the parole system that existed under prior law in Wisconsin. *State v. Brown*, 2006 WI 131, ¶ 44, 298 Wis.2d 37, 725 N.W.2d 262. The

conditional liberty afforded under Extended Supervision, just as the conditional liberty associated with one's status as a parolee, is a liberty interest protected by the Fourteenth Amendment. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). But like a person on parole, an inmate released on Extended Supervision has already been convicted of a crime, and that conviction justifies imposing extensive limitations on the individual's liberty that could not otherwise be imposed. *Id.* at 480 ("Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."). Among the limitations resulting from the conviction is being subject to detention upon a determination by a Probation and Parole Agent that reasonable grounds exist to believe the individual has violated the conditions of his or her supervision. Bolling's claim is essentially that neither his agent nor her supervisor had reasonable grounds to believe he violated the conditions of his Extended Supervision here because at the time of the violation alleged, he was still a prisoner and had not yet been released on Extended Supervision.

Bolling finds some support for his argument in *State ex rel. Woods v. Morgan*, 591 N.W.2d 922 (Wis. App. 1999). In that case the Wisconsin Court of Appeals held that an inmate whose parole was revoked on account of a violation of his parole supervision rules that occurred after his mandatory release date but while he was still in custody was entitled to habeas corpus relief. The Court held that because the petitioner was an inmate of a correctional facility, rather than a parolee, at the time of the underlying rule violation, he was subject to the prison rules, not the rules of his supervision, and the revocation of his parole was unlawful. *Id.* at 925. Bolling argues that the same conclusion follows here. He was an inmate at the time he contacted the woman in Mississippi, and

4

despite the fact that his conduct was in violation of his rules of supervision, no violation occurred because he was still in custody.

*Wood*'s conclusion was seemingly undermined by the Wisconsin Supreme Court's ruling in *State ex rel. Riesch v. Schwarz*, 2005 WI 11, 278 Wis.2d 24, 692 N.W.2d 219. Riesch, an inmate who was scheduled for release on parole told his agent he would not participate in sex offender treatment at an approved facility upon his release from prison as required by his supervision rules. The agent placed a parole hold on Riesch even though he had not yet been released from custody and had him transported to a county jail. There, Riesch refused to cooperate in the booking process. His parole was thereafter revoked on the grounds that he had failed to have a suitable residence, failed to cooperate with jail staff, failed to obey jail rules, and failed to give a statement to the agent. Riesch then sought *certiorari* review claiming that Division of Hearings and Appeals acted outside its jurisdiction and contrary to law in revoking his parole status because he was not on parole at the time of revocation. The Wisconsin Supreme Court affirmed the denial of Riesch's petition for certiorari, holding that an inmate can have the status as a parolee and be subject to revocation proceedings even though he has not been released from physical custody. In rejecting Riesch's argument, the Court noted:

> The holding Riesch seeks today is a bright-line rule that elevates form over substance. He contends that inmates must always be released from physical custody before any revocation is commenced, regardless of whether they have signed parole rules, complied with parole rules, or cooperated with their agent. In essence, he is asking for a ritual where the DOC releases uncooperative inmates just outside the prison walls on their mandatory release dates before subsequently placing parole holds upon them.

692 N.W.2d ¶ 29.

On the other hand, the Court also found significant in *Riesch* the fact that the petitioner had reached his mandatory release date at the time of the violation: "In sum, we determine that Riesch had attained the status of a parolee after reaching his mandatory release date, despite the fact that he was not released from physical custody." *Id.* at ¶ 31. Bolling's alleged violation occurred after he signed his rules of supervision but before his mandatory release date. Ultimately, *Riesch* does not support the conclusion that an inmate is subject to the rules of supervision prior to his mandatory release. Thus, it remains doubtful that Bolling could have been revoked for contacting the woman in Mississippi prior to his mandatory release.

This case differs from *Wood* and *Riesch*, however, in that the conditional liberty Bolling was granted on Extended Supervision was not revoked. This is significant because Wisconsin Probation and Parole Agents have the authority to briefly detain clients for disciplinary purposes or to prevent a possible violation by the client. Wis. Admin. Code § DOC 328.22(2). That is precisely what happened here. Plaintiff was detained for a short period of time – about a week – in order for state probation officials to investigate a potential rule violation and to prevent a possible violation by Plaintiff. At the very least, Agent Murphy had reasonable grounds to believe that Bolling was planning to violate the no contact rule upon his release, and it was not immediately apparent that his earlier conduct was not a violation, notwithstanding the fact that the contact initiated by Bolling occurred prior to his release. Had Bolling remained in custody, he would have been entitled to a preliminary hearing on whether there was probable cause to detain him and, ultimately, a final hearing on whether he had in fact violated the conditions. *Morrissey*, 408 U.S. at 485. But seven days is not so long a time for a parolee to be held without a preliminary hearing so as to deprive a parolee of due process. *See Atkins v. City of Chicago*, 631 F.3d 823, 834 (7th Cir. 2011) (Hamilton,

6

J., concurring) ("Delays as long as 24 days between the arrest and even the preliminary hearing are constitutionally permissible, even without any showing of emergency or extraordinary circumstance.") (citing *Faheem–El v. Klincar*, 841 F.2d 712, 714–15, 723 (7th Cir. 1988) (en banc)). It thus follows that Bolling was not deprived of any right guaranteed by the Constitution by the defendants and that the defendants are entitled to summary judgment in their favor.

Alternatively, summary judgment is proper because the Defendants are entitled to qualified immunity. Government officials performing discretionary functions are shielded from lawsuits insofar as their conduct does not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). All officials, except "the plainly incompetent or those who knowingly violate the law," are protected by qualified immunity. *Malley v. Briggs,* 475 U.S. 335, 341 (1986), cited with approval in *Saucier v. Katz,* 533 U.S. 194, 202 (2001). Courts apply a two step analysis when analyzing qualified immunity. The initial inquiry asks whether there is a constitutional violation present on the facts alleged and the second question is whether the right was clearly established at the time the violation occurred. *See Saucier,* 533 U.S. at 201. Here, as described above, the uncontested facts do not show a clear constitutional violation. Moreover there is certainly no clearly established constitutional right for a probationer to be free of temporary detention while a state parole agent checks on a potential or possible rule violation. The Defendants made discretionary decisions to temporarily hold Plaintiff pursuant to Wis. Admin. Code § DOC 328.22. Defendant Murphy's decision was predicated on Plaintiff's mental health history and prior actions, which include multiple incidents of lewd and lascivious conduct as well as Plaintiff's attempt to contact the Mississippi woman. (DPFF ¶ 18.) Plaintiff provides no authority for his

7

position that he had a due process liberty interest in avoiding such temporary detainment where revocation is not sought.

**CONCLUSION**

For the reasons set forth herein Plaintiff's motion for summary judgment (Dkt. 22) is **denied** and Defendants' motion for summary judgment (Dkt. 24) is **granted.** The clerk is directed to enter judgment consistent with this order. Finally, Bolling's request that the matter be held in abeyance until he is able to find a lawyer willing to assist him is denied. The case has been pending almost a year, and the issue is a narrow one of law that has been clearly presented by the pleadings, affidavits and briefs.

Dated at Green Bay, Wisconsin, this __8th__ day of July, 2011.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge